```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION

                       IN ADMIRALTY
```

N.E. TAYLOR BOATWORKS, INC.,

    Plaintiff,

v.                                  Case No. 8:10-cv-01844-T-33EAJ

The M/V SIR WINSTON, a 118-foot
power vessel, her engines,
tackle, furniture, equipment,
appurtenances, etc., <u>in</u> <u>rem</u>,
and WINSTON KNAUSS, individually,
<u>in</u> <u>personam</u>, her Owner,

    Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants M/V Sir Winston and Winston Knauss' Motion for Summary Judgment as to Count I of Plaintiff N.E. Taylor Boatworks, Inc.'s Complaint (Doc. # 16) and the response thereto (Doc. # 22). For the reasons that follow, the motion is denied.

**I.**    **BACKGROUND**

In the early morning hours of January 23, 2010, the M/V Sir Winston, a 118-foot dinner cruise vessel, ran aground off Longboat Pass, Florida. After Winston Knauss, the vessel's owner, failed to retain tow services from two separate companies, the Coast Guard asked Knauss and his crew to vacate the vessel. (Knauss Dep. Doc. # 22-3 p.38 ln.13-p.44 ln.7). Later that day, Knauss requested that Boatworks pump and tow the vessel from the sandbar. (Knauss Dep. Doc. # 22-3 p.63 ln.2-22); (Banyas Aff. Doc. # 24 at ¶4). Both

parties signed a work order prior to service, the terms of which were $550 per hour plus expenses. (Doc. # 16-2 Exh. C). Although the type of work to be performed was not listed on the work order, Knauss stated the boat needed to be pumped out and towed off the sandbar. (Knauss Dep. Doc. # 22-3 p.76 ln.14-15).

Prior to signing the work order, both parties inspected the vessel. However, the actual signing of the work order occurred in a restaurant a number of hours after Knauss had been aboard the vessel (Knauss Dep. Doc. # 22-3 p.63 ln.10-15) and two hours after Boatworks had been aboard. (Doc. # 16). At the time the work order was signed, both Knauss and Boatworks' principal, John Banyas, were under the impression that pumping and towing were the only services necessary to free the vessel. Boatworks asserts that Knauss represented that "the engine rooms were not flooded, that he had sealed the water-tight doors, that the grounding was not that bad." (Doc. # 16-3 Exh. D).

Upon returning to the vessel, Banyas alleges both the condition of the vessel and the weather had worsened to the extent that the "vessel became, and was, in danger of heeling over completely and becoming a total loss." (Banyas Aff. Doc. # 24 at ¶11). As a result, Boatworks had to employ additional vessels and men to assist.[1] (Banyas Aff. Doc. # 24 at ¶15).

Boatworks delivered the vessel to Hendry's Shipyard in Tampa, Florida. (Doc. # 22). On February 10, 2010, Boatworks generated an

---

[1] In total, four vessels were required: three commercial fishing vessels and one skiff. (Doc. # 16-1 Exh. B).

invoice. That invoice, presented to Defendants, included charges of $57,110 for towing services as contracted and an additional $500,000 for salvage services. (Doc. # 16-5 Exh. F). Defendants have not made full payment.[2] (Doc. # 1).

On August 18, 2010, Boatworks filed a complaint for non-payment of services rendered. (Doc. # 1). The complaint contains two counts: Count I seeks a salvage award, and Count II asserts a maritime lien against the vessel. (Doc. # 1). Defendants seek summary judgment as to Count I. (Doc. # 16).

## II. STANDARD OF REVIEW

Summary Judgment shall be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is *material* if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party carries the initial burden of demonstrating to the Court, by reference to materials on file, that there are no genuine issues of material fact that must be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once that burden is met, the responsibility shifts to the nonmoving

---

[2] Boatworks admits that Zurich, the insurer, provided it with a check. However, Boatworks asserts that the check was not for the demanded amount. (Doc. # 16-3 Exh. D).

party to put forward specific evidence showing a genuine issue of material fact remains. Anderson, 477 U.S. at 248.

In making a summary judgment determination, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997). "If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Int'l Metalizing & Coatings, Inc. v. M&J Constr. Co. of Pinellas County, Inc., No. 8:09-cv-643-T-33AEP, 2010 WL 3517038, at *3 (M.D. Fla. Sept. 7, 2010) (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003)).

### III. **ANALYSIS**

Boatworks alleges that, although the parties had initially contracted for towing, the Boatworks' crew found the named vessel in imminent marine peril not anticipated by the towage contract. (Doc. # 1 at ¶ 17). Boatworks thereafter took emergency measures in severe conditions to salvage the vessel. (Doc. # 1 at ¶ 18). Boatworks alleges that it reacted quickly to unanticipated perilous conditions and, in good faith, undertook extraordinary efforts far above and beyond towing the vessel. Accordingly, Boatworks seeks a salvage award in addition to the towing fees anticipated by the contract.

"'Salvage is the reward or compensation allowed by the

4

maritime law for service rendered in saving maritime property, at risk or in distress, by those under no legal obligation to render it, which results in benefit to the property.'" Atlantis Marine Towing, Inc. v. The M/V Priscilla, 491 F. Supp. 2d 1096, 1099 (S.D. Fla. 2007) (quoting The Neshaminy, 228 F. 285, 288-89 (3rd Cir. 1915)). A salvage award is granted to a salvor as both compensation for risky service and as inducement for saving maritime property. Boat Raising & Reclamation v. Victory, No. 2:06-cv-78-FtM-29DNF, 2007 WL 4462995, at *6 (M.D. Fla. Dec. 14, 2007) (citing Offshore Marine Towing, Inc. v. MR23, 412 F.3d 1254, 1257 (11th Cir. 2005)).

There are three types of salvage services: "'(1) voluntary, wherein the compensation is dependent upon success[3]; (2) rendered under a contract for a per diem or per horam wage, payable at all events; or (3) under a contract for compensation payable only in case of success.'" Id. (quoting The Elfrida, 172 U.S. 186, 192 (1898)). At issue is a claim for voluntary salvage.

To prove entitlement to a voluntary salvage award, three elements must be satisfied:

> (1) A maritime peril from which the ship or other property could not have been rescued without the salvor's assistance. (2) A voluntary act by the salvor- that is, he must be under no official or legal duty to render the assistance. (3) Success in saving, or in helping to save at least part of the property at risk.

Klein v. Unidentified Wrecked & Abandoned Sailing Vessel, 758 F.2d 1511, 1515 (11th Cir. 1985) (citing Grant Gilmore & Charles Black, Jr., The Law of Admiralty 534-35 (1975)). Defendants assert

---

[3] Voluntary salvage is frequently referred to as "pure salvage."

Boatworks failed to establish the second element because the parties were bound by contract and, thus, Boatworks was under a legal duty to render assistance to the Sir Winston. (Doc. # 16). Defendants argue that "[w]hen there is a contract to undertake a salvage service . . . there is no 'pure' salvage because the existence of a contract between the parties precludes voluntariness." Indemnity Ins. Co. of N. Am. v. Destin Reef Constr. LLC, No. 3:05cv11, 2005 WL 3878024, at *4 (N.D. Fla. Sept. 29, 2005).

This rule applies only when a valid contract exists, however. Boatworks, in its response, asserts that mutual mistakes of fact regarding both the condition of the Sir Winston and the services necessary to recover the vessel existed when the parties entered into the contract; therefore, Boatworks contends that no valid contract exists.

A mutual mistake by both parties that has a material effect on performance will make a contract voidable by the adversely affected party. Restatement (Second) of Contracts §152 (1981). This is true in the maritime context. "It is well-settled that an admiralty court possesses authority to set aside a salvage contract that was procured . . . because of a mutual mistake of a material fact." Black Gold Marine, Inc. v. Jackson Marine Co., Inc., 759 F.2d 466, 469-70 (5th Cir. 1985); see, e.g., 77A C.J.S. *Salvage* § 89 (updated in 2011) (stating, "[a] contract may be disregarded where it was entered into under a mutual mistake of fact.").

Boatworks asserts that at the time the work order was signed,

both parties shared the mistaken belief that the only services the vessel required were a pump and tow and that the vessel was not in any danger. As evidence, Boatworks offers Knauss' statement that "the engine rooms were not flooded [and] that [Knauss] had sealed the water-tight doors." (Doc. # 16-3 Exh. D). Boatworks asserts that it relied on these representations regarding the condition of the vessel. (Doc. # 22). However, Boatworks asserts that in fact "[t]he port engine was totally submerged and the starboard engine was inoperable." (Doc. # 1 at ¶7).

Boatworks' principal, Banyas, stated that Knauss repeatedly referred to the service he was requesting as "pumping and towing." (Banyas Aff. Doc. # 24 at ¶5). Here, it is important to note that there is a difference between towing and salvage. The former is done for convenience while the later is done in situations of peril. The Flottbek, 118 F. 954, 960 (9th Cir. 1902). The request for a *pump* and tow may imply a degree of peril, but Knauss stated prior to signing the contract that "the boat . . . wasn't in any danger at all." (Knauss Dep. Doc. # 22-3 p.67 ln.19-22).

Finally, Banyas stated that prior to entering into the agreement, he also mistakenly believed the vessel was in no danger. (Banyas Aff. Doc. # 24 at ¶9). However, he ultimately concluded that the vessel actually was in danger, and the work Boatworks performed went well beyond the agreed services of pumping and towing. (Id.). In fact, the conditions worsened to such an extent that Banyas attempted to call Knauss about the vessel possibly heeling over and about whether Boatworks would continue with the

7

work. (Id. at ¶17). Mrs. Knauss stated that Mr. Knauss was sleeping and could not be disturbed. (Id.).

Viewing the evidence in the light most favorable to the nonmoving party, the Court agrees that a fact finder could reasonably find that a mutual mistake of fact existed as to the condition of the vessel during the formation of the contract and that no valid contract existed. Whether a mutual mistake of fact existed is a genuine issue of material fact precluding summary judgment in Defendants' favor as to the salvage award.

Further, Boatworks asserts that even if there was no mutual mistake of fact and a valid salvage contract existed, there is a genuine issue of material fact regarding whether the change in weather conditions transformed a contractual obligation into a purely voluntary endeavor. (Doc. # 22).

Where a contractual obligation exists to tow a vessel and a perilous situation arises that necessitates salvage, a salvage award may be proper. The Connemara, 108 U.S. 352 (1883) (holding that when a crew hired for a towing job found itself instead, fighting a perilous fire, it should be granted a salvage award because there is no legal obligation to remain with a vessel when there is risk to personal safety.).

Here, Banyas states that while they were removing the Sir Winston, weather conditions worsened appreciably, and the vessel was in danger of becoming a total loss. (Banyas Aff. Doc. # 24 at ¶¶10-11). He further offers that the waves increased in height and frequency, that the boat began listing heavily to its port side,

8

and that a neighboring boat did capsize. (Id.). Because of the change in conditions, Banyas had to employ additional boats and men to render assistance to the Sir Winston. (Id.). Finally, he states that he could have pulled his crew but decided to remain - concluding that without their assistance the vessel would have been a total loss. (Id.).

Again, viewing this evidence in the light most favorable to the nonmoving party, the Court agrees that whether weather conditions worsened appreciably enough to transform a pump and tow contract into a salvage venture is a genuine issue of material fact. Accordingly, summary judgment in favor of Defendants as to Count I is denied.[4]

Accordingly, it is

**ORDERED, ADJUDGED,** AND **DECREED:**

Defendants' Motion for Summary Judgment as to Count I (Doc. # 16) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 2nd day of November, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[4] Boatworks also asserts that whether the contract was a "payable at all events" contract is another genuine issue of material fact precluding summary judgment. The Court need not address that additional argument as summary judgment has already been denied.

Copies:

All Counsel of Record